The adverse credibility determination made by the immigration judge is not based on substantial evidence. We are asking that the adverse credibility determination be reversed and that the case be remanded to the immigration judge for further fact-finding, as the Eighth Circuit did in Zhang v. Holder's 2013 case. The judge committed clear error in making the determination by finding that Mr. Ali lied where in fact he did not, and by finding numerous alleged inconsistencies where a review of the record reveals that none existed. Our position is that if the adverse credibility determination is reversed, the case should be remanded. As in Zhang, albeit in a footnote, the Eighth Circuit wrote that because the Eighth Circuit found the reasons supporting the adverse credibility determination insufficient, that the court did not need to address the other findings made by the IJ, the other issues raised by the IJ. With that said, I want to move . . . How about the birth certificate? Yes, Your Honor. Let me finish. Okay. If I recall, he supposedly said it was broken to pieces and that he then threw it away, yet the government was able to come up with an intact copy. Right. So doesn't that look like an inconsistency? That's correct, Your Honor. Both the immigration judge and the board relied on this as a central . . . I will address the facts in just a moment, but if I could just say that the immigration judge wrote, in her opinion, that Mr. Ali lied about the birth certificate. She said that she's not sure why he lied, but that this lie casts a shadow of doubt on all the rest of his testimony. Now, this . . . in fact, he did not lie. I'm about to explain why. And this critical finding of the IJ should cast a shadow of doubt on her entire decision because she shows that this clouded her whole view of the case. Also, the board made an error on the birth certificate issue in that the board wrote that Petitioner testified implausibly and inconsistently about how he came to be in And as you noted, Your Honor, that was not the issue raised by the judge in her decision. Rather, the judge was concerned, how did the government, how did DHS get the birth certificate? The board wrote that they agreed with the immigration judge that he testified implausibly about how he got it. So this is an error that I think reflects the lack of thorough review of the record. As to the fact of the birth certificate, Mr. Ali testified consistently and credibly throughout all four of the different transcribed interviews and testimony about the birth certificate. He testified that he gave it to the Mexican authorities, that it was given back to him, he washed it accidentally, and threw it away. Now, it turns out that the government, DHS, had a copy of it. Neither Mr. Ali nor the government knew how the government had gotten that birth certificate. It appears that a copy was made and was in either his belongings or with the, he also talked about handing over papers to U.S. Customs that had been given by the Mexican authorities. I think that it's very reasonable to assume that the Mexican authorities made a copy of his birth certificate and included it with the other papers that reflected his identity. As to his identity, the birth certificate is an absolutely crucial document for Mr. Ali in the sense that he needs this birth certificate to prove who he is. The immigration judge said, we don't know who you are. And so this birth certificate only helps him. He had no reason to lie about it. He didn't lie about it. When the government said, look, we have your birth certificate, he said, okay, I don't know how you got it because I think I washed it. He never changed his story. He never testified inconsistently. He admitted that, frankly, he didn't know. I think the inconsistency, didn't the one they present, hadn't that also been washed? Well, they couldn't tell exactly. I think that they speculated it appeared it had been, but they couldn't tell for sure. I think the inconsistency is whether or not he threw it away. Okay. Well, I think that he believes, he testified consistently that he believed that he did. And if it was somehow among his belongings that were confiscated by DHS or in the papers that he turned over, it's still not a lie. Okay. And so I think that there's some language in the Jean case that, although generally the court defers to the credibility findings, deference is restrained when the immigration judge has expressed reasons reflect improper bias or speculation. I think that as her own decision shows, her ideas about or speculation about the fact that he lied. What did the court do that indicated the court was not being fair and impartial in assessing his credibility? I'm saying that one of the things was saying that he lied about his birth certificate. Well, that's an assessment of his credibility. Based on demeanor, based on the documentation, based on testimony, what can you show us to indicate that the court in making its credibility determination wasn't doing it as a reasonable court should and would normally do? Well, I'll go through the other factual allegations that the judge relied on that were upheld by the BIA. I think as to the birth certificate, the fact that she assumed he lied is one of these things that shows she had a bias. So besides the birth certificate, the other issues are the 2003 attack, the 2009 attack and his travels to the United States. In 2003, the BIA upheld expressly the issues of the identity of the attackers, which in consistent. He always said that they were Hawea, the more powerful tribe or clan, excuse me. Secondly, whether he and his father were transported to the hospital, which also he never varied from that story. Third, whether the family was actually robbed of money, which if one looks at the record, one could see that he never said that money was taken from the family in 2003. I believe the issue to be clarified with regard to the money in 2003 is that during testimony about the 2003 incident, the judge asked if the attackers took money from you. He said, yes, but later, and he talked about the time that he was kidnapped, which referred to the 2009 incident, which I'm about to get to. He never varied from his testimony that in 2009, his family, along with Sadak, a Hawea man, paid a ransom. So he was referring to that money that was paid. 2009, the board expressly upheld the judge's findings of inconsistencies on account of who paid a ransom, as I was just saying. So they faulted Mr. Ali for saying, first he said an elderly man paid the ransom, along with a family. Then he said a neighbor. Then he said Sadak, a good Hawea man. These are not inconsistent. They're not mutually exclusive. He never testified that Sadak was not elderly. He never testified that Sadak was not a neighbor. So the judge never asked him if Sadak was elderly or a neighbor. She just- Was Sadak a family member? No. Okay. Didn't he at one point say that it was a family member that paid the ransom? He said that it was an elderly and along with the family. So that in conjunction, an elderly and the family paid the ransom. So Mr. Ali clarified in testimony that he didn't know exactly how much money came and from where to pay the ransom. He thought that some came from the family, but that Sadak was the person, as a Hawea, he was able to come to the Hawea ransom capture place and pay the money. Second thing about 2009, again, that faulted about the attacker's identity. Again, these are not mutually exclusive categories. See, first he said thieves and warlords, but that it was Hawea. Then he said men. Then he said Hawea again. Again, these are not inconsistent. They can be the same people. Finally, 2009, whether they demanded money or valuables, again, he was not inconsistent. He always said, yes, a ransom was paid. They demanded a ransom and it was paid. Regarding the travel, the board upheld the immigration judge saying that Mr. Ali testified inconsistently about how he traveled. Well, how did he get to Mexico? He flew from Addis Ababa, Ethiopia to Sao Paulo via Turkey. Then he flew directly from Sao Paulo to Tegucigalpa, Honduras. Then from Honduras, he took a car through Guatemala to Mexico and presented himself at the border. The issue about the travel boils down to, was there a stop? Was there a layover from Sao Paulo, Brazil to Tegucigalpa, Honduras? Mr. Ali testified that he flew directly. Then the government on cross-examination said, well, look at this. I have some paper here that says there's no such thing as a direct flight from Sao Paulo, Brazil to Tegucigalpa. And Mr. Ali said, well, I think that's what happened and perhaps I'm not remembering a stop because I was really tired from this long smuggling journey as a refugee. So he did leave room for the possibility that he had misremembered this aspect of the journey. But he did not testify inconsistently about it. He merely left space for the possibility that he was ... Well, you know, one of the problems we have where a witness's credibility is at issue is not having the ability to sit where the court sat looking at the person giving their usual indicators of a person's nervousness or confidence in the things that they're saying. Yes, Your Honor. And I understand the deferential standard that exists in this regard for that reason. However, the record as a whole in this case, when you look at the record and the specific reasons that were given by the judge and expressly upheld by the BIA are not supported by the record. Rather, the record reflects that sometimes there were no inconsistencies. And in just a few cases like this one, there was perhaps a small change of his idea of what could have happened. This one case of, okay, maybe I don't remember properly is not ... All I'm saying is the things you're describing, I could have sat where the IJ was and may have believed him. I could also hear everything you're saying and have sat where the IJ was and not believed him and it not have been based on a bias or ... And Your Honor, you're sitting where you're sitting and I think we're all looking at the record and the record shows that the judge found inconsistencies where they didn't exist, found a lie where he didn't lie. And minor inconsistencies and omissions should not support an adverse credibility determination. I'm going to just wrap up, but the subpoenas also with regard to the travel were relied on to say that you lied about your travel. Now, because a subpoena came back from Turkish Airlines saying there's 25 ... Sorry, there's 10 Liban Alis flew around Europe in the last few years. So, we think maybe that was you. I want to say that one of these tickets was from a time after Mr. Ali was in the United States and there are ... I looked on LinkedIn, there are 25 Liban Alis on LinkedIn. I don't think that this shows that he was in Europe taking these flights. I'd like to just save the rest for rebuttal and assume. Okay. So, Mr. Jolly. May it please the court. My name is Lance Jolly. I represent the respondent, the United States Attorney General. Even if Petitioner plausibly accounts for the discrepancies in the record relied on by the agency in finding Petitioner not credible, the agency did not need to accept Petitioner's explanations. As the agency provided specific cogent reasons for disbelieving Petitioner, the court should defer to the agency's adverse credibility finding. Aren't most of these inconsistencies pretty trivial? I mean, why does it matter whether he stopped, you know, had a particular stop on his travels? A lot of the inconsistencies could very well be viewed as minor. But under the standard of review, it's under the totality of the circumstances. And so, a lot of these minor inconsistencies add up such that the record would not compel a contrary conclusion as to the adverse credibility finding. I'll also note that in Fofana v. Holder 704 F3 554, the lack of corroboration is a specific and cogent reason to disbelieve Petitioner. And in this aspect, Petitioner did not corroborate any real aspect of his claim, his identity, the 2003 attacks or the 2009 attacks. Wouldn't it be pretty hard to get corroborative evidence out of Somalia? Out of certain individuals, certainly it would be hard to get corroboration. I'm not sure how... What kinds of things do people typically offer? If he offered a letter from, say, Sadiq who helped him leave Somalia, if he got a letter from his family in Ethiopia who helped him come to the United States and arranged it, that would have probably went quite a ways in corroborating his claim. I'm not sure how accessible a letter from, say, his family members like his mother or siblings that would have specifically corroborated, say, the 2003 event would be, but he didn't corroborate his claim in any respect. And as this Court has stated in Averinova v. MacCasey 509 F3 890, the combination of an adverse credibility finding and a lack of corroborating evidence for the claim of persecution means that the applicant's claim fails regardless of the reason for the alleged persecution. We'll now go through the inconsistencies in the record. As to his identity and nationality, the petitioner testified on direct that his birth certificate was broken into pieces when he washed it into his pocket and he threw it away. And under Red v. MacCasey, when his testimony clearly conflicts with evidence of the record, the immigration judge does not need to accept the evidence. Does the record reflect where the government got a copy of his birth certificate? It's unclear where the government got it from. So when they did introduce it, there was comments that it was wet. The IG said it was wet. He's unsure if it was wet or washed. As to where it came from, there's no indication. When it was first introduced on page 131 in the record, it indicates that it was an original birth certificate. The petitioner did testify that that was his birth certificate. He's unsure that it was an original or was not an original. That it was an original. Can you give some estimate of the volume of people coming across the border there where he came across? No, I cannot. But it seemed like he was. There's the record of the deportable alien that was conducted by DHS, and that's on pages 643 through 47 that describes him presenting himself to the border security officials and how they processed him. But it doesn't indicate that when I read it last night, it didn't indicate that they found a birth certificate amongst his belongings or whatever. So it's unclear where the birth certificate came from. As to the 2012, he didn't provide any corroboration about his identity or nationality. He did provide testimony from witnesses that knew his parents, but they did not know him. And as far as the subpoenas with the airlines, the immigration judge didn't rely on that for further evidence that he was not credible. It was just evidence that he didn't show who he was and he didn't verify his travels to the United States. Regarding the 2003, in his sworn entry statement, he said, they captured us and took us to the north. Indicating that his attackers took him to the north. And that's on page 653 of the record. During his credible fear interview and his testimony, he testified that his attackers left him behind. And that the men from the neighborhood took him to the hospital. Again, it's a clear inconsistency in the record as to what happened in 2003. Whether it's a minor one about how he got to the hospital or whatnot, that's immaterial in the scheme of the totality of the circumstances of the credibility standard. And again, he didn't submit any corroborating evidence of his hospital stay. There was no medical documents submitted, page 213 of the record. And he made no attempt to get the hospital records, as he testified to in 267 and 268 of the record. Even though I'm not sure how accessible a statement from his mother or his wife or his siblings would be, there's no indication that he tried to get any such statement from them. And in 2009, there's questions about who paid the ransom. In his credible fear interview, he says Sadiq. In the testimony, he said the elderly and his family. In his entry statement, he said the elderly and his family. Sure, Sadiq might be an elderly person. But generally, when you say the elderly, it connotes more than one person. But again, it very well could be a minor inconsistency. But under the totality of the circumstances, it just doesn't wash. And there's also the minor inconsistency about searching the house, whether he was asked for money or not. And there's differing testimony from the credible fear, where he said that they asked for money. And in his testimony, where they didn't. Again, the IJ did not have to accept his explanation, because the petitioner did not provide any corroboration for any aspect of his claim. And for these reasons, the court should deny the petition for review. Thank you. How much time does Mr. Ojello go over? One and a half minutes. Thank you. The government made one point for me, which is that Mr. Ali did corroborate his identity with witnesses who knew his parents and testified under penalty of perjury that he answered questions correctly about who he was, according to his parents. I'd also like to point out, in the government's brief at page 24, in the footnote on the bottom, they addressed the issue of the alternative denial on the merits and saying that, if necessary, remand would be appropriate so that the board could clarify the basis of such denial on the merits, basically pointing to the issue of, the judge said that, well, they stole money from you, so doesn't that mean that's the only reason that they, suggesting that money was the principal reason. Mr. Ali testified credibly that the attackers talked about his clan when they attacked him, and so a protected ground is a central reason. I'd also like to distinguish a couple cases that the government cites in their brief, Fessahaye v. Holder and Kifleyesis v. Gonzalez, both of which included admissions by, or unrebutted findings that the petitioner had lied about material aspects of their asylum application, whereas in this case, there's no differing, Mr. Ali never lied, he never gave conflicting statements about any material aspect of his claim. This is the kind of situation that deserves the restrained deference discussed in the Zhang decision, and a remand for further fact-finding. Do you have any questions? I don't think so. Okay. Thank you. Thank you.